IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CHESTER O'QUINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-2013-SMY |
| | ) | |
| JACQUELINE LASHBROOK, | ) | |
| K. JAIMET, | ) | |
| C/O HUFF, | ) | |
| C/O JOHNSON, | ) | |
| C/O THEIS, | ) | |
| C/O BRITTON, | ) | |
| C/O SPENCER, | ) | |
| C/O FINLEY, | ) | |
| C/O WALTERS, | ) | |
| C/O ERWIN, | ) | |
| RICHARD SMITH, | ) | |
| C/O PITMAN, | ) | |
| C/O WEBB, | ) | |
| C/O MAYER, | ) | |
| C/O WRANGLER, | ) | |
| C/O SWALLERS, | ) | |
| C/O OLKOWSKI, | ) | |
| C/O MALCOME, | ) | |
| C/O McCLELAND, | ) | |
| NURSE DANNIE, | ) | |
| NURSE TAMMY, | ) | |
| NURSE REBA, | ) | |
| NURSE ASHLEY, | ) | |
| LAURA BARRON, | ) | |
| MASON, | ) | |
| AMBER SAATHOFF, | ) | |
| WANDA HILL, | ) | |
| ROSE LOOS, | ) | |
| DIRECTOR JOHN BALDWIN, | ) | |
| FLATT, | ) | |
| HOCH, | ) | |
| and CHRISTINE BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Chester O'Quinn, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Dixon Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges that while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), numerous individuals were deliberately indifferent to his front-cuff permit, diabetes, and need for showers. He also alleges that he was also placed on suicide watch in a cell where he experienced unconstitutional conditions of confinement and was denied access to legal mail. He asserts claims against the defendants under the Eighth Amendment as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e. Plaintiff seeks monetary damages and injunctive relief.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## **The Amended Complaint**

Plaintiff makes the following allegations in the Amended Complaint: Plaintiff suffers from diabetes, hypertension, and degenerative disc disease. (Doc. 18, p. 7). He was issued a front-cuff permit as a result of his disabilities. (*Id.*).

On October 28, 2016, Plaintiff asked to speak with a crisis team after being told that he was going to be transferred to another cell. (*Id*.). Lt. Webb refused to accommodate Plaintiff's front-cuff permit when transferring him to the healthcare unit. Plaintiff spoke with Mental Health Professional Mrs. Mason who determined that Plaintiff was at risk of suicide. (*Id*. at p. 8). Plaintiff was placed on suicide watch but was not housed in the healthcare unit. Instead, he was placed in a cell in segregation receiving which lacked a panic button. (*Id*.). Plaintiff was stripped naked and given a broken "smock" which did not cover him, leaving him virtually naked. (*Id*.). Although he asked C/O Huff for another "smock", Huff refused to provide him with one.

The mattress in the cell had feces, urine, and other bacteria. (*Id*.). The florescent light stayed on for 24/7, preventing Plaintiff from sleeping. (*Id*.). Plaintiff was not allowed any socks or shoes, even though he had an ADA permit for special shoes. As a result, dirt and glass particles got stuck in his feet. (*Id*. at pp. 10, 14). The cell was also infested with ants, spiders, and crickets. (*Id*.). Plaintiff suffered a "break-out" on his skin from exposure to bed bugs. (*Id*. at p. 9). He informed Nurse Dannie about his skin issues, but she did not do anything about his condition. (*Id*.). Plaintiff also informed the mental health professionals, including Mrs. Mason, Amber Saathoff, Wanda Hill and Rose Loos, about the conditions on suicide watch but they also did nothing about the conditions. (*Id* at pp. 10-11).

When Mrs. Mason ordered Plaintiff placed on suicide watch on October 28, 2016, Plaintiff told her that he was going on a hunger strike. (Doc. 18, p. 8). Mason failed to record the hunger strike or inform medical staff or security. (*Id*.). When lunch was delivered to Plaintiff's cell, he again declared a hunger strike to C/O Huff, who also refused to record the hunger strike. (*Id*.). Plaintiff informed C/O Johnson of his hunger strike later that day, but he also did not record it. (*Id*.). Instead, Johnson informed Plaintiff that he had to miss three straight meals in a row before

the hunger strike would be recorded. (*Id*.). During the third shift that same day, Nurse Dannie spoke with Plaintiff and he told her that he was on a hunger strike and had not eaten anything that entire day. (*Id*. at p. 9). She did not record the hunger strike, nor did she bring him his medication for his chronic pain or blood-pressure. (*Id*.).

The next day, Plaintiff informed Nurse Tammy of the hunger strike but she refused to record it. (Doc. 18, p. 9). Nurse Tammy did check Plaintiff's blood sugar levels. Plaintiff also informed Nurse Reba and on October 30, 2016, informed Nurse Ashley, but neither of the nurses recorded the hunger strike. (*Id*.). Nurse Ashely provided Plaintiff with insulin, which was improper as Plaintiff had not eaten anything. (*Id*.). Plaintiff also informed C/O Spencer, C/O Finley, and Lt. Olkowski but they also refused to record the hunger strike. (*Id*.).

Plaintiff told C/O Erwin about his hunger strike on October 30, 2016 and Erwin reported it to Lt. McBride. (*Id*.). Lt. McBride spoke with Plaintiff and informed him that she would begin the paperwork on his hunger strike. McBride later informed Plaintiff that she had been instructed by Major McCleland not to record his hunger strike. (*Id*.).

On October 31, 2016, Lt. Walls informed Plaintiff that Major Malcome instructed him not to record Plaintiff's hunger strike. (*Id*. at p. 10). C/O Britton, C/O Theis, C/O Pitman, and Nurse Laura Barron also refused to record Plaintiff's hunger strike and Laura Barron also refused to check his blood sugar levels (*Id*. at pp. 10, 12). Finally, Plaintiff was seen by Nurse Brittney, who wrote his hunger strike in his medical chart after checking his blood sugar and discovering that it was low (*Id*.). Plaintiff had two seizures as the result of being given insulin while on the hunger strike. (*Id*. at p. 10).

Although Plaintiff had a front-cuff permit during this time period, numerous individuals ignored his permit. On November 2 and 3, 2016. C/O Walters, C/O Theis, and Lt. Wrangler

4

ignored his permit and cuffed him behind his back, causing him pain. (Doc. 18, p. 10). Lt. Swallers ignored Plaintiff's front-cuff permit when he escorted him to the healthcare unit for lab work on November 4, 2016. (*Id*. at pp. 12-13).

Plaintiff was denied showers by C/O/ Huff and Lt. Swallers while he was on suicide watch. (Doc. 18, p. 12). Lt. Swallers told Plaintiff that he could not have a shower until he stopped his hunger strike and his suicide watch ended. (*Id*.). He was also denied access to personal and legal mail by C/O Richard Smith and C/O Johnson while on suicide watch. (*Id*. at p. 14). Plaintiff wrote grievances and letters to grievance officer Flatt and case worker supervisor Hoch informing them of his conditions, but the grievances were ignored. (*Id*. at p. 13). Plaintiff also wrote Warden Jacqueline Lashbrook about his situation, but his letter was ignored. Plaintiff filed his grievance on November 13, 2016, after he was released from suicide watch. (*Id*. at p. 26-35).

Plaintiff put in repeated requests to be seen by the mental health professionals after he was released from suicide watch, but his requests were ignored. (Doc. 18, p. 11). Although Plaintiff had been informed by Amber Saathoff that he would be monitored by mental health upon his release, he was not seen by any of the mental health professionals. (*Id*.). This left him even further depressed. (*Id*.).

### **Preliminary Dismissals**

Plaintiff identifies C/O Mayer as a defendant in the caption of his Amended Complaint but fails to allege any personal involvement in any of the claims identified. Also, C/O Mayer is not mentioned anywhere in the body of Plaintiff's Amended Complaint. As such, the Court finds that Plaintiff has failed to state a claim against C/O Mayer.

To the extent Plaintiff seeks to assert a claim against Christine Brown, he has failed to allege any personal involvement on her part. Plaintiff's Amended Complaint alleges only that

5

Brown was the healthcare unit administrator and was in charge of the healthcare unit staff. Section 1983 does not authorize *respondeat superior* or "supervisory liability." *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (*citing Ashcroft v. Iqbal,* 556 U.S. 662 (2009)). In other words, in order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (*quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Because Plaintiff has not alleged any personal involvement by Christine Brown, he fails to state a claim against her.

To the extent Plaintiff seeks to raise claims against the grievance officials for ignoring his grievances, he fails to state a claim. Plaintiff's Amended Complaint alleges that grievance officer Flatt, case worker supervisor Hoch, and Wardens Jacqueline Lashbrook and K Jaimet failed to respond, or ignored, his grievances, and that his attempts to exhaust his claims were thwarted by their actions. But the mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Moreover, the Amended Complaint does not suggest that these defendants "turned a blind eye" to an alleged constitutional violation as Plaintiff was already released from suicide watch when he filed his grievance. (Doc. 18, pp. 26-35). *See e.g., Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015).

## Discussion

Based on the allegations in the Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

> **Count 1:** C/O Huff, Nurse Dannie, Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos were deliberately indifferent under the Eighth Amendment to Plaintiff's conditions of confinement while on suicide watch.

6

| | |
|---|---|
| **Count 2:** | Mrs. Mason, C/O Huff, C/O Johnson, Nurse Dannie, Nurse Tammy, Nurse Reba, Nurse Ashley, C/O Spencer, C/O Finley, Lt. Olkowski, C/O Erwin, McCleland, Malcome, C/O Britton, Laura Barron, C/O Theis, Amber Saathoff, Wanda Hill, Rose Loos, and C/O Pitman were deliberately indifferent under the Eighth Amendment when they refused to record Plaintiff's hunger strike. |
| **Count 3:** | C/O Walters, C/O Theis, Lt. Wrangler, Lt. Webb, and Lt. Swallers were deliberately indifferent to Plaintiff's front-cuff permit in violation of the Eighth Amendment, |
| **Count 4:** | Americans with Disabilities Act and/or the Rehabilitation Act claim for failing to accommodate his front-cuff permit. |
| **Count 5:** | Laura Barron, Nurse Ashley, Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos were deliberately indifferent under the Eighth Amendment when they failed to properly monitor his insulin while on a hunger strike. |
| **Count 6:** | Amber Saathoff, Wanda Hill, Mrs. Mason, and Rose Loos were deliberately indifferent under the Eighth Amendment when they refused to see Plaintiff upon his release from suicide watch. |
| **Count 7:** | Lt. Swallers and C/O Huff were deliberately indifferent under the Eighth Amendment to Plaintiff's medical needs when they refused to allow him to shower while on suicide watch when he was allowed daily showers due to his disabilities. |
| **Count 8:** | C/O Johnson and C/O Richard Smith violated Plaintiff's First Amendment and/or Fourteenth Amendment right to legal mail when they refused to deliver his mail while Plaintiff was on suicide watch. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 1**

Plaintiff has stated a viable claim against C/O Huff, Nurse Dannie, Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos for deliberate indifference to the conditions of his cell while on suicide watch. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal citations and quotation marks omitted); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls). Therefore, Count 1 will be allowed to proceed.

**Count 2**

Plaintiff alleges that he declared a hunger strike on the day he was placed on suicide watch and that it was not recorded until four days later, on October 31, 2016. The Seventh Circuit has held that, when an inmate declares a hunger strike, he cannot maintain a claim where he is not seen by medical personnel immediately, and the only effects are weight loss and temporary discomfort. *Owens v. Hinsley*, 635 F.3d 950 (7th Cir. 2011) (no deliberate indifference to medical needs where, after 21 days on hunger strike, inmate is taken to medical ward). Here, Plaintiff was on a hunger strike for four days before it was documented by Nurse Laura Barron. And while Plaintiff alleges that he suffered from issues with his insulin while on hunger strike, he does not allege that any of the guards were aware of his insulin levels or that the failure to document the hunger strike by any of the guards or nurses caused him harm.[2] *Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (in a case where an inmate claims a delay in treatment as opposed to a total denial, the complaint must allege that the delay caused some degree of harm); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(to be actionable, the delay must have had a detrimental effect on the inmate's health). Further, to the extent Plaintiff alleges that Defendants violated an IDOC rule or policy by failing

---

[2] Plaintiff does allege that his insulin levels were being monitored by a number of the nurses during his hunger strike.

to record his hunger strike, an alleged violation of a prison rule or regulation does not, by itself, establish a constitutional violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). Thus, Count 2 will be dismissed without prejudice.

**Count 3**

Plaintiff alleges that C/O Walters, C/O Theis, Lt. Wrangler, Lt. Webb, and Lt. Swallers all refused to honor his front-cuff permit and instead cuffed him behind his back, causing him pain. The failure to abide by a medical permit related to a disability may constitute interference with "treatment once prescribed" in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). Accordingly, the Court will allow Count 3 to proceed.

**Count 4**

Under the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, because of that disability ... be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The Rehabilitation Act ("RA") also prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and RA is the same, except that the RA includes as an additional requirement the receipt of federal funds, which all states accept for their prisons. *Jaros v. Illinois Department of Corrections*, 685 F.3d 667, 671 (7th Cir. 2012) (citing 29 U.S.C. § 705(2)(B)). Under both statutes, discrimination includes the failure to accommodate a disability. *Jaros*, 684 F.3d at 672 (citation omitted).

Plaintiff alleges that he is a qualified person with a disability due to his physical impairment and that he was given a "front-cuff permit" for those disabilities. (Doc. 18, p. 7). He also alleges that Defendants failed to make reasonable accommodations to provide him with access to services

on the same basis as other inmates. These allegations are sufficient to articulate a colorable ADA and/or RA claim. Defendant John Baldwin, in his official capacity, is a proper defendant for Plaintiff's ADA and/or Rehabilitation Act claim. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). Plaintiff will therefore be allowed to proceed with Count 4 against John Baldwin in his official capacity.

**Count 5**

Plaintiff has also stated a colorable Eighth Amendment deliberate indifference claim against Laura Barron, Nurse Ashley Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos for allegedly failing to properly monitor his insulin levels and for giving him insulin while on his hunger strike. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016). Thus, Plaintiff will be allowed to proceed on Count 5.

**Count 6**

Plaintiff alleges that he put in a number of sick-call requests upon his release from suicide watch which the mental health professionals ignored, causing him to become more depressed. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016); *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (delay in treatment). As such, Plaintiff has sufficiently stated an Eighth Amendment deliberate indifference claim against Defendants Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos. Count 6 will proceed against these defendants.

**Count 7**

The Court also finds that Plaintiff has stated a claim against Lt. Swallers and C/O Huff for denying him access to showers. Plaintiff alleges that as a result of his disability, he is supposed to

10

receive daily showers. (Doc. 18, p. 14). However, Lt. Swallers and C/O Huff allegedly denied him access to all showers while he was on suicide watch. These allegations state a claim for deliberate indifference (See, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016)), and Plaintiff will be allowed to proceed on Count 7 against Defendants Lt. Swallers and C/O Huff.

**Count 8**

Prisoners have protected First Amendment interests in sending and receiving mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). An inmate's legal mail is entitled to even greater protections because of the potential for interference with the Fourteenth Amendment right of access to the courts. *Guajardo–Palma v. Martinson,* 622 F.3d 801, 802 (7th Cir. 2010). Because a confidential communication with a lawyer is aimed to win a case rather than to enrich the marketplace of ideas, it is "more straightforward" to approach an interference with legal mail claim via an inmate's Fourteenth Amendment right of access to the courts rather than his First Amendment right. *Id.* at 802-03.

"[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) (citing *Wolf v. McDonnell*, 418 U.S. 539, 577 (1974)). However, isolated incidents of interference with legal mail are generally insufficient to maintain a claim. *Guarjardo-Palma*, 622 F.3d at 805-06. Here, although Plaintiff alleges that he received legal mail while on suicide watch but that C/O Richard Smith and C/O Johnson refused to provide him with the mail while he remained on suicide watch and on a hunger strike, he does not specify on how many occasions the alleged deprivation occurred. (Doc. 18, p. 14). He does however allege that because of the

11

defendants' interference with his legal mail, he missed a deadline in a pending lawsuit which caused the case to be dismissed. (*Id*. at p. 34). The Court finds that Plaintiff has set forth allegations that, while sparse, are sufficient to state a claim. Therefore, Count 8 will be allowed to proceed.

## Motion for Counsel

In his Motion for Counsel (Doc. 15), Plaintiff states that he needs counsel because he has nerve damage which prevents him from writing for long periods of time. Plaintiff attaches several letters from attorneys he has contacted for representation; all have declined to take his case. As such, Plaintiff has met his threshold burden of attempting to obtain counsel on his own.[3]

Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged."). Accordingly, Plaintiff's Motion for Counsel (Doc. 15) is **DENIED without prejudice.** Plaintiff may renew his request for the recruitment of counsel at a later date.

## Disposition

**IT IS HEREBY ORDERED** that **C/O Mayer, Christine Brown, Hoch, Flatt, Jacqueline Lashbrook, and K. Jaimet** are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. The Clerk is **DIRECTED** to terminate those individuals in the Case Management/Electronic Case Filing ("CM/ECF") system.

**IT IS FURTHER ORDERED** that **Count 1** will proceed against **C/O Huff, Nurse Dannie, Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos**.

---

[3] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

**IT IS FURTHER ORDERED** that **Count 2** against **Mrs. Mason, C/O Huff, C/O Johnson, Nurse Dannie, Nurse Tammy, Nurse Reba, Nurse Ashley, C/O Spencer, C/O Finley, Lt. Olkowski, C/O Erwin, McCleland, Malcome, C/O Britton, Laura Barron, C/O Theis, Amber Saathoff, Wanda Hill, Rose Loos, and C/O Pitman** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. The Clerk is **DIRECTED** to terminate **Nurse Tammy, Nurse Reba, C/O Spencer, C/O Finley, Lt. Olkowski, C/O Erwin, McCleland, Malcome, C/O Britton, and C/O Pitman** from the Court's CM/ECF system.

**IT IS FURTHER ORDERED** that **Count 3** will proceed against **C/O Walter, C/O Theis, Lt. Wrangler, Lt. Webb, and Lt. Swallers.**

**IT IS FURTHER ORDERED** that **Count 4** will proceed against **John Baldwin (in his official capacity)**.

**IT IS FURTHER ORDERED** that **Count 5** will proceed against **Laura Barron, Nurse Ashley, Mrs. Mason, Amber Saathoff, Wanda Hill, and Rose Loos**.

**IT IS FURTHER ORDERED** that **Count 6** will proceed against **Amber Saathoff, Wanda Hill, Mrs. Mason, and Rose Loos**.

**IT IS FURTHER ORDERED** that **Count 7** will proceed against **Lt. Swallers and C/O Huff.**

**IT IS FURTHER ORDERED** that **Count 8** will proceed against **C/O Johnson and C/O Richard Smith.**

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants C/O Huff, Nurse Dannie, Mrs. Mason, Amber Saathoff, Wanda Hill, Rose Loos, C/O Walters, C/O Theis, Lt. Wrangler, Lt. Webb, Lt. Swallers, John Baldwin, Laura Barron, Nurse Ashley, C/O Johnson, and C/O Richard Smith: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons),

and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a

delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 3/18/2019**

                                                                  */s/ Staci M. Yandle*
                                                             **United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**